IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**NORBERTO MÉNDEZ-FRADERA**

**Plaintiff,**

v.    CIVIL NO. 14-1875 (GAG)

**JAVIER VÁZQUEZ-COLLAZO**

**Defendant.**

## OPINION AND ORDER

Plaintiff Norberto Méndez-Fradera ("Méndez") brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that Defendant Javier Vázquez-Collazo ("Vázquez") demoted him because of his political affiliation in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution. (Docket No. 26 ¶ 54.) Plaintiff also brings state law claims pursuant to Article II, §§ 1 and 7 of the Constitution of the Commonwealth of Puerto Rico, Puerto Rico Law No. 100 of June 30, 1959, P.R. LAWS ANN. tit. 29, §§ 146-151 et seq. ("Law 100"), and Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. LAWS ANN. tit. 31, §§ 5141, 5142 ("Article 1802 and 1803"). Id.

Presently before the Court is Defendant's motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6). (Docket No. 28.) After reviewing the parties' submissions and pertinent law, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss at Docket No. 28.

**Civil No. 14-1875 (GAG)**

## I.     Relevant Factual and Procedural Background

Defendant Vázquez, a member and activist of the Popular Democratic Party ("PDP"), became the Superintendent of the Puerto Rico Capitol in December, 2012, after the defeat of the New Progressive Party ("NPP") in the November, 2012 general election. (Docket No. 26 ¶¶ 15-17.) The Office of the Superintendent ("the Superintendence"), established by Law No. 4 of July 21, 1977, P.R. LAWS ANN. tit. 2, §§ 651-60 *et seq.*, is responsible for the maintenance, conservation and repairs of the Puerto Rico Capitol Building. (Docket No. 26 ¶ 13.)

Plaintiff Méndez has been an employee of the Superintendence since April 1, 2001. Id. ¶¶ 1; 21. Plaintiff has a bachelor's degree in Business Administration and Accounting and a master's degree in Human Resources. Id. ¶ 22. He began as a cabinetmaker and gradually worked his way up to become the Main Accounting Officer[1] in charge of contracts in the Finance and Accounting Department. Id. ¶¶ 25-29.

At the time he was hired, Plaintiff was affiliated with the PDP. (Docket No. 26 ¶ 24.) However, Plaintiff's political affiliation changed after developing a close professional and personal relationship with Defendant's predecessor, former Superintendent Eliezer Velázquez ("Velázquez"), who is affiliated with the NPP. (Docket No. 26 ¶ 31-32.) Plaintiff began attending NPP activities with Velázquez. Id. ¶ 33. Plaintiff alleges that his recent affiliation with the NPP became widely known in the Superintendence because he actively participated in Velázquez's NPP campaign for the Puerto Rico Senate and he accompanied Velázquez to a highly publicized local activity for then Republican presidential candidate Mitt Romney. Id. ¶ 34. Plaintiff contends that as soon as Defendant assumed office, he personally engaged in reviewing the personnel records of

---

[1] Plaintiff refered to this position as "Main Accounting Analyst" at Docket No. 26 ¶ 29, but used "Main Accounting Officer" in the remaining allegations. Id. ¶¶ 36; 38; 47-48. The Court adopts "Main Accounting Officer" for this Opinion.

**Civil No. 14-1875 (GAG)**

employees in order to identify their respective political affilations to target NPP supporters for reprisal. Id. ¶ 20. Additionally, Defendant appointed another employee to serve as Plaintiff's subordinate, allegedly to familiarize himself with Plaintiff's work so he could replace Plaintiff in the future. Id. ¶ 36.

On December 9, 2013, the Deputy Superintendent Alvaro Vazquez-Ramos called Plaintiff to the Human Resource Office and told him that he "had been reclassified from Main Accounting Officer to Executive Officer" and that his monthly compensation would be reduced by $500. Id. ¶¶ 37-39. Plaintiff was transferred to the Security Department to perform security guard duties. Id. ¶¶ 40; 42. Plaintiff maintains that he had not been charged with any misconduct before the transfer and the salary reduction. Id. ¶ 41. Defendant subsequently appointed a PDP-affiliated employee as the new Main Accounting Officer, with an increased salary of $950. Id. ¶¶ 47-48.

## II.    Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all

3

**Civil No. 14-1875 (GAG)**

reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

**III.    Legal Analysis**

    A.  Political Discrimination Claim

Defendant seeks dismissal of Plaintiff's political discrimination claim arguing Plaintiff has not pled sufficient facts to show Defendant knew of his political affiliation or that such knowledge motivated Plaintiff's reclassification at the Superintendence.  (Docket No. 28 at 5-13.)

The First Amendment prohibits government officials from taking "adverse employment action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernandez, 640 F.3d at 13. To state a *prima facie* case of political discrimination based on the First Amendment Plaintiff must demonstrate four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred,

4

**Civil No. 14-1875 (GAG)**

and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010). The Court evaluates the cumulative effect of all factual allegations instead of analyzing each of them in isolation. Ocasio-Hernandez, 640 F.3d at 14.

At this stage, Defendant only challenges two elements of Plaintiff's prima facie case: (1) whether it is plausible that Defendant knew of Plaintiff's political affiliation and (2) whether Defendant's knowledge of this fact motivated Plaintiff's reclassification.[2] (See Docket No. 28 at 4.) The Court will discuss each element in turn.

### 1. Knowledge of Plaintiff's Political Affiliation

Defendant claims Plaintiff failed to support his allegations that Defendant knew or that he affirmatively inquired into his political affiliation. (Docket No. 28 at 6-7.)

The First Circuit has recogznied that political discrimination often turns on an employer's cloaked motives that can be hard for the employee to prove. Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 7 (1st Cir. 2015). Thus, knowledge may be inferred from circumstantial evidence. See, e.g., Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 44 (1st Cir. 2007) (holding that a reasonable jury could infer that the defendant was aware of the plaintiff's NPP affiliation based on

---

[2] In his opposition to Defendant's Motion to Dismiss, Plaintiff argues discriminatory animus can be implied from the fact that Defendant has failed to proffer any non-discriminatory reasons for Plaintiff's reclassification. (Docket No. 31 at 12.)

Generally, if the plaintiff proves his *prima facie* case of political discrimination, the burden shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action and establish, by a preponderance of the evidence, that the same action would have been taken regardless of the plaintiff's political beliefs – also known as the Mt. Healthy Defense. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). In response, "the plaintiff may discredit the proffered non-discriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-Garcia v. Guillermo Rodríguez, 212 F.3d 69, 77 (1st Cir. 2000).

However, raising the Mt. Healthy defense "is inappropriate at the motion to dismiss stage because the parties have not yet engaged in any significant discovery." Landron & Vera, LLP v. Somoza-Colombani, No. 12-1858(SEC), 2013 WL 2422807, at *8 (D.P.R. June 3, 2013). Therefore, the Court focuses its analysis on the plausibility of Plaintiff's allegations to establish his political discrimination *prima facie* case.

5

testimony that the plaintiff "spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria."). While knowledge is not imputed to defendant when a plaintiff merely alleges that his political affiliation is well known, Rivera Feliciano v. State Ins. Fund Corp., 652 F. Supp. 2d 170, 186-87 (D.P.R. 2009) (citations omitted), courts are willing to infer defendants knew of a plaintiff's political affiliation when the defendant engages in a "witch-hunt" to obtain such information. See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013).

In the present case, the Court can infer from Plaintiff's factual allegations that Defendant knew of Plaintiff's political affiliation. Plaintiff alleges that Defendant, a PDP activist, became the Superintendent one month after the PDP gained the majority in the Puerto Rico legislature. (Docket No. 26 ¶¶ 15-17.) Plaintiff asserts that as Defendant prepared for the transition to the new PDP administration, Defendant personally identified employees with any connection to the NPP by reviewing employee personnel records. Id. ¶ 20. Plaintiff also maintains he became an active supporter of the NPP after developing a close relationship with former superintendent Velázquez, participating in Velázquez's campaign for the Senate and attending political events with him. Id. ¶¶ 31-34. Plaintiff's friendship with Velázquez and his involvement in a highly publicized tour with Republican presidential candidate Mitt Romney became widely known within the Superintendence. Id. ¶ 34.

Thus, the Court finds that Plaintiff's political activism outside the Superintendence and his public friendship with Velázquez, coupled with the allegation that Defendant himself reviewed employee personal records to identify employees potentially affiliated with the NPP, reasonably support an inference that Defendant knew of Plaintiff's political affiliation.

2. <u>Substantial or Motivating Factor</u>

Plaintiff must allege sufficient facts to show political affiliation was a substantial or motivating factor for the adverse employment action. <u>Lamboy-Ortiz</u>, 630 F.3d at 239. This prong is often described as a showing of discriminatory animus. The First Circuit has recognized that "it is rare that a 'smoking gun' will be found in a political discrimination case, and thus circumstantial evidence alone may support a finding of political discrimination." <u>Id.</u> at 240. Specifically, pertinent factors include time lapsed between the reclassification and the change in political administration, the absence of negative job evaluations and nondiscriminatory explanation for the reclassification, and the political affiliation of the person who replaced Plaintiff. <u>Rodríguez-Reyes</u>, 711 F.3d at 57; <u>Medina-Velázquez v. Hernández-Gregorat</u>, 767 F.3d 103, 111 (1st Cir. 2014). Additionally, Plaintiff must sufficiently allege Defendant's involvement in the reclassification. <u>Medina-Velázquez</u>, 767 F.3d at 111-12 (citing <u>Ocasio-Hernández</u>, 640 F.3d at 16) ("[p]ublic officials may be held liable . . . for a constitutional violation only if a plaintiff can establish that constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.").

The Court first determines if Plaintiff alleged sufficient facts to infer Defendant was involved in the decision to reclassify him. In doing so, the Court must decide whether Defendant was put on actual or constructive notice of Plaintiff's reclassification. <u>Medina-Velázquez</u>, 767 F.3d at 112 (citations omitted). The Court can infer involvement if the defendant directed, encouraged, or chose not to remedy the adverse employment action. <u>Id.</u> (citing <u>Lipsett v. Univ. of P.R.</u>, 864 F.2d 881, 902 (1st Cir. 1988)). Plaintiff alleges that Defendant had at least constructive notice of Plaintiff's reclassification.

**Civil No. 14-1875 (GAG)**

Defendant has authority over personnel decisions at the Superintendence because he appointed another employee to be Plaintiff's subordinate. (Docket No. 26 ¶ 36.) Not only did Defendant personally review the personnel records of employees to identify their political affiliations as he prepared for the transition to the new PDP administration, but it was also the deputy Superintendent acting under Defendant's direct authority who informed Plaintiff of his reclassification. Id. ¶¶ 20; 37-38. Thus, the Court finds it plausible that Defendant could have been involved in Plaintiff's reclassification.

The Court is not convinced by Defendant's argument that a causal connection is missing because it took a year to re-classify Plaintiff. (Docket No. 28 at 10.) Courts usually find political animus where there is temporal proximity between the administration change and the adverse employment action. See, e.g., Medina-Velázquez, 767 F.3d at 111; Grajales v. P.R. Ports Auth., 682 F.3d 40, 50 (1st Cir. 2012). Nonetheless, a longer time interval, alone, does not prove absence of political animus. Rodríguez-Reyes, 711 F.3d at 56-57. The Court notes that this lag could result from the difficulty of filling Plaintiff's position, given the skills required and level of expertise needed to become the Main Accounting Officer in the Department of Finance and Accounting. (Docket Nos. 26 ¶ 36; 31 at 12.) Plaintiff has a bachelor's degree in Business Administration and Accounting and a master's degree in Human Resources, and maintains that it took him six years and two promotions to become the Main Accounting Officer. (Docket No. 26 ¶¶ 22-28.) Even with political animus, Defendant might have had trouble fringing someone qualified to replace Plaintiff.

The Court finds that Plaintiff has alleged sufficient facts to support an inference of Defendant's discriminatory motive. According to Plaintiff, at no point was he charged with misconduct that may have led to his transfer and salary reduction, nor was he given any reasons for

8

his reclassification. (Id. ¶ 41; Docket No. 31 at 12.) Plaintiff was taken from a position that he held for six years and transferred to perform security duties and physical activities for which he had no prior training or experience. (Docket No. 26 ¶¶ 29, 42-43.) Moreover, the Superintendent subsequently appointed a PDP-affiliated individual to replace Plaintiff. Id. ¶ 47. Plaintiff alleges that quickly after Defendant took office, he appointed another employee to be Plaintiff's subordinate "in order to gain acquaintance with his job, while a replacement affiliated to the PDP could be named." Id. ¶ 36. These allegations support a plausible inference that political affliation was a substantial or motivating factor behind Plaintiff's reclassification.

Considering Plaintiff's political activism with the NPP, Defendant's personal review of employee records to identify potential NPP supporters, and Plaintiff's allegations about the unexplained reclassification and the subsequent PDP-affiliated replacement, the Court finds that Plaintiff has sufficiently pled facts to establish his *prima facie* case. Thus, Defendant's motion to dismiss Plaintiff's political discrimination claim is **DENIED**.

B. Fifth Amendment Due Process Claim

Defendant argues that Plaintiff failed to state a due process claim under the Fifth Amendment because Defendant is not a federal actor and the reclassification was not a federal action. (Docket No. 28 at 14.)

The due process clause of the Fifth Amendment only applies to actions by the federal government. Gerena v. Puerto Rico Legal Services, Inc., 697 F.2d 447, 449 (1st Cir. 1983) (citing Public Utilities Commission v. Pollak, 343 U.S. 451, 461 (1952)). Plaintiff concedes that there is no federal actor or federal action involved in his complaint, and consents to the dismissal of his Fifth Amendment claim. (Docket No. 31 at 16.) Thus, Defendant's motion to dismiss Plaintiff's Fifth Amendment due process claim is **GRANTED**.

C. <u>Fourteenth Amendment Due Process Claim</u>

1. Procedural Due Process

The Fourteenth Amendment forbids a state to "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV. The due process guarantee has both procedural and substantive aspects. <u>See</u> <u>Amsden v. Moran</u>, 904 F.2d 748, 753 (1st Cir. 1990). A viable procedural due process claim must demonstrate a "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property'. . . without due process of law." <u>Romero-Barceló v. Hernández-Agosto</u>, 75 F.3d 23, 32 (1st Cir. 1996). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." <u>Ruiz-Casillas v. Camacho-Morales</u>, 415 F.3d 127, 134 (1st Cir. 2005) (citations omitted). In order to determine whether public employees possess such a property right, the First Circuit requires that the Court examine local law and the terms and conditions of the employment arrangement. <u>See</u> <u>Ruiz-Casillas</u>, 415 F.3d at 134.

Under Puerto Rico law, career employees have a property interest in their continued employment. <u>Garnier v. Rodriguez</u>, 506 F.3d 22, 27 (1st Cir. 2007) (citing <u>González-de-Blasini v. Family Dept.</u>, 377 F.3d 81, 86 (1st Cir. 2004)). Due process requires that prior to a deprivation of life, liberty, or property the individual being deprived of said interest be given notice and an opportunity to be heard. <u>See</u> <u>Herwins v. City of Revere</u>, 163 F.3d 15, 18 (1st Cir. 1998) (citing <u>Memphis Light, Gas and Water Div. v. Craft</u>, 436 U.S. 1, 19 (1978)). However, this property interest extends only to the position itself, not to the functions performed by the employee. <u>Ruiz-Casillas</u>, 415 F.3d at 134 (finding no violation of due process under the Fourteenth Amendment because the plaintiff only had his duties downgraded but he was not fired). Where a plaintiff does not contend that his employment was terminated, but rather asserts that he was demoted, or his

compensation diminished, Puerto Rico law will not afford him a constitutionally protected interest. See Rodriguez-Pinto v. Tirado Delgado, 798 F. Supp. 77, 83-84 (D.P.R. 2004), *aff'd* on this ground, 982 F.2d 34, 41 (1st Cir. 1993); see also Morales-Narvaez v. Rossello, 852 F. Supp. 104, 113 (D.P.R. 1994) (summarizing cases holding that a plaintiff is not deprived of a property interest by a change in duties or title).

In this case, Plaintiff has failed to state a claim for a procedural due process violation because he was not fired. Even though Plaintiff was transferred to the security department within the Superintendence, under Puerto Rico law, Plaintiff has no property interest in his original job functions. Thus, Plaintiff's procedural due process claim based solely on the transfer to a different department, even with a change of duties and salary reduction, is not sufficient to show he was deprived of a property interest. See Quiles-Santiago v. Rodriguez-Diaz, 851 F. Supp. 2d 411, 427 (D.P.R. 2012).

### 2. Substantive Due Process

"A substantive due process claim requires allegations that the government conduct was, in and of itself, inherently impermissible irrespective of the availability of remedial or protective procedures." Maymi v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008). When Plaintiff has stated a viable First Amendment claim, a substantive due process claim based on the same conduct is barred. Ramírez v. Arlequín, 447 F.3d 19, 25 (1st Cir. 2006); see also Cruz v. P.R. Planning Bd., 99 F. Supp. 3d 249, 259-60 (D.P.R. 2015). In the instant case, there is no basis for a substantive due process claim because Plaintiff's assertion that the reclassification and the salary reduction are acts of political discrimination are covered by the First Amendment. The same allegations cannot also support a substantive due process claim. Thus, Defendant's motion to dismiss Plaintiff's Fourteenth Amendment due process claims is **GRANTED**.

### IV.   State Law Claims

Because Plaintiff's First Amendment political discrimination claim survives Defendant's motion to dismiss, the Court may, in its discretion, exercise supplemental jurisdiction over his remaining state law claims. See Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995) (citations omitted) (holding when a state law claim and a federal claim "derive from a common nucleus of operative fact" and the plaintiff "would ordinarily be expected to try them both in one judicial proceeding," the district court may exercise supplemental jurisdiction over the state law claim.). The Court addresses each of Plaintiff's state law claims in turn.

First, Defendant moves to dismiss Plaintiff's Law 100 claim because it is only applicable to private entities or those governmental agencies that act as a private business. (Docket No. 28 at 19-20.) Law 100 prevents private enterprises or government agencies acting as a private business from discriminating by reason of age, race, color, religion, gender or national origin or social condition . Mulero Abreu v. Oquendo-Rivera, 729 F. Supp. 2d 498, 524 (D.P.R. 2010). Plaintiff concedes Defendant in his personal capacity does not operate as a private business or enterprise subjecting to Law 100.  (Docket No. 31 at 20.) Thus, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's Law 100 claim.

Second, Defendant argues that Plaintiff's Article 1802 claim should be dismissed because Plaintiff has failed to include factual allegations regarding negligent acts, or show that Defendant caused the tortious conduct. (Docket No. 28 at 18-19.) In order to recover under Article 1802, Plaintiff must show negligent acts, damages, and a causal link between the negligent acts and damages. Irvine v. Murad Skin Research Lab., 194 F.3d 313, 321 (1st Cir. 1999). In the instant case, Plaintiff alleged that he suffered emotional distress and lost wages and benefits arising from the unexplained reclassification, downgraded duties and salary reduction. (Docket No. 26 ¶¶ 38-

**Civil No. 14-1875 (GAG)**

40; 54). Furthermore, in support of his Section 1983 claim, Plaintiff sufficiently alleges that because of his political affiliation, Defendant discriminated against him by demoting him from the Finance and Accounting Department to the Security Department and reducing his salary. (Docket No. 26 ¶¶ 38-40; 53-54.) The underlying factual allegations of Plaintiff's Section 1983 claim also encompass the essential elements of his Article 1802 claim. Thus, Defendant's motion to dismiss Plaintiff 1802 claim is **DENIED.**

Lastly, "the Federal and Puerto Rico Constitutions contain analogous provisions protecting an individual's right to Due Process of Law." Nazario v. Dep't of Health of Puerto Rico, 415 F. Supp. 2d 48, 48-49 (D.P.R. 2006); compare U.S. Const. Amend. XIV, § 1 with P.R. Const. art. II, § 7. Because the Court grants Defendant's motion to dismiss as to Plaintiff's federal Due Process claims, Defendant's motion as to Plaintiff's claim under Article II, § 7 of the Puerto Rico Constitution is also **GRANTED**.

**V.     Conclusion**

For the reasons stated above, Defendants' motion to dismiss at Docket No. 28 is **GRANTED in part and DENIED in part**. Defendant's motion to dismiss Plaintiff's First Amendment political discrimination claim and Article 1802 claim is **DENIED**. Defendant's motion to dismiss Plaintiff's Fifth and Fourteenth Amendment Due Process, and Law 100 claims is **GRANTED.**

**SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of March 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge